DYKSTRA *v.* GRAND RAPIDS, GRAND HAVEN & MUSKE-
GON RAILWAY CO.

1. CARRIERS—STREET RAILROADS—ALIGHTING FROM CAR—NEGLI-
GENCE—PERSONAL INJURIES.

   Where plaintiff's declaration alleged that she was thrown from
   the step of defendant's car while in the act of alighting, be-
   fore she had sufficient time to alight, by the negligent start-
   ing of the car, evidence that the car jerked and threw her to
   the ground from the first step of the platform on which she
   was standing preparatory to alighting, was not a material
   variance.[1]

2. SAME.

   The case is not governed by the rule claimed by defendant's at-
   torneys to govern, that a sudden jerk of the car while the
   passenger was on the car or platform is not negligence, unless
   the movement of the car was unusual.

3. APPEAL AND ERROR—NEW TRIAL—EXCEPTIONS.

   A motion for a new trial cannot be relied on to save a point on
   the trial not covered by an exception; although the circuit
   judge has discretion to grant the motion on such ground.

4. TRIAL—SPECIAL QUESTIONS—CONTROLLING CHARACTER.

   It was not error to refuse to submit to the jury a special ques-
   tion as to whether or not the conductor cautioned plaintiff to
   wait until the usual stopping place was reached before alight-
   ing, since the point was not controlling.

5. SAME—ARGUMENT.

   Plaintiff's attorneys were not in error in commenting during
   their argument on the failure of defendant to call its time-
   keeper or other employés to contradict plaintiff's statement
   that the car was late.

6. EVIDENCE—PERSONAL INJURIES—CARRIERS.

   Plaintiff's testimony that bending over while she was at work
   or getting out of a natural position induced pain, was compe-
   tent, in an action for personal injuries.

---

[1] Starting street car before passenger has alighted, see note in 4
L. R. A. (N. S.) 140; and note in 11 L. R. A. (N. S.) 140.

Error to Muskegon; Sessions, J. Submitted February 14, 1911. (Docket No. 53.) Decided March 13, 1911.

Case by Mary Dykstra against the Grand Rapids, Grand Haven & Muskegon Railway Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Carroll, Kirwin & Hollway*, for appellant.

*Cross, Vanderwerp, Foote & Ross*, for appellee.

HOOKER, J. Mary Dykstra, the plaintiff, recovered a judgment against the defendant, a suburban railway company, in an action for negligence in starting its car, whereby she was thrown to the pavement and injured. The declaration alleges that:

"And plaintiff avers that, when said car arrived and stopped at Washington avenue, said plaintiff arose from her seat, carrying her purse in her left hand, and walked to the rear end of said car for the purpose of alighting therefrom, and, while in the act of alighting from the rear platform of said car as aforesaid, without any fault or negligence on her part, and while standing upon the steps thereof, and while in the act of alighting therefrom, the said company, by its agents, servants, and employés, carelessly and negligently started said car before this plaintiff had sufficient time to alight, and by means thereof plaintiff was jerked and thrown violently to the ground, and she was greatly injured thereby."

Plaintiff testified that:

"The car stopped before I left my seat, and I went to the back end of the car to get off. When I got to the back door, he told me he could not help me off, so I went on myself, and got to the first step, and he rung the bell as I was on the first step, and he motioned for me to get off and with the back of his hand, and I was shoved off the car, and that is what made me fall that way and hurt me and injured my spine. The car stopped before I started to leave the car, and the conductor was standing on the back platform of the car. I noticed his hands. They were black with dirt and grease, and he said, 'I

can't help you because my hands are dirty,' and he showed me his hands. At that time the car was standing still. I carried my coat and hand bag, which is about so large (indicating), and it had a handle to it. If I am not mistaken, there were three steps to that car. After the car was stopped, while he stood there, I got off. Yes, that is, I was on the first step; I didn't walk the rest of the steps, I fell off. When he spoke to me I walked right off on the step. I took hold of the bar on the car or the handle which was located on both sides of the car and is a part of the car. I got off the side of the car which is toward Peck street, which was the right side of the car coming towards the city. I used my right hand to take hold of the handle or bar, and after I stepped down on the first step the conductor did not say anything more to me. I saw him at that time put his hand to the bell rope, and I heard the bell ring. By the first step, I mean the one next to the top, the one below the platform. The car started right after he rung the bell. I could not keep myself from being jerked out there."

Also:

"After the car stopped, the car was 8 or 10 feet past the corner, and then I left my seat. I did not leave the car until it stopped, and I did not leave my seat before the car came to a full stop, and then I started for the rear platform. I noticed several passengers as I passed them in reaching the rear platform, but I can't tell who they were. The conductor was on the rear platform facing the interior of the car and the motorman was in the vestibule in the front of the car. I went out on the back platform, and the conductor says: 'Now, I won't be able to help you because my hands are dirty,' which is the first thing he said. He showed me his hands as I approached the rear platform down the aisle of the car, and then I went down the steps, took one step. While I was taking that step he rang the bell, and the jerk of the car threw me to the pavement. The bell must have been somewhere near the platform; I don't know just where, but I think it was over his head. It must have been there. I will swear I heard a bell over his head on the rear end of the car."

Also:

"The hind steps of the car stopped at the same place

where I fell, and the car did not move 8 or 10 feet from the point where I fell. I did not step further down the steps than the first step, but just took one step. I had a hold of the rear handle of the car when it was moving. I fell while I was standing there. I wasn't turned at all when I fell; I was just as if I was sitting here. I had a hold of the car that way, and it jerked me that way, pushing me forwards, causing me to fall off on my left side. When I was standing there, the car was moving, and it stopped just about the same place where I fell. It had stopped when I fell. It did not stop after I fell; it went right on."

The trial judge refused to direct a verdict for defendant at the close of plaintiff's proofs, and error is assigned upon this refusal.

It is contended that there was a variance between the declaration and proofs for the reason that:

"Starting a car while the passenger is in the act of alighting, without allowing sufficient time to alight, is a different cause of action from that of causing a jerk of the car while the passenger is aboard the car or platform thereof and in a place of safety, and the injury would not have occurred had it not been for such movement of the car."

We are of the opinion that the declaration justified the proof offered, and that the contention that:

"But if the variance was not sufficient to justify the court in granting said motion, and even if plaintiff's theory of this accident be adopted, then we submit that the general rule that a carrier must allow a sufficient time for a passenger to get on or off a car before starting or stopping has no application whatever to the facts of this case, but rather that this case is governed by an equally well-established rule that the mere fact that the car started with a sudden movement or jerk, and that a passenger while on the car or platform was hurt by reason of such, does not make out a case of negligence in the manner of starting the car, but the proofs must go further and show that the start was unusually sudden or violent, which was not done in the case at bar"—should not be sustained.

Her declaration indicates that, the car being at rest, she

started to alight, but that the car was started when it ought not to have been, and the effect was to throw her or jerk her from the car. Her testimony tends to sustain this combination of circumstances: Neither the declaration nor the proof asserts that the accident was due solely to a premature starting of the car or to an improper method of starting. The plaintiff's testimony was disputed, and the jury might have found from the testimony that she was not jerked from the car; but the testimony to that effect was not so overwhelming as to warrant the granting of a new trial on that ground.

Five questions were presented to the court with a request that they be submitted to the jury for special findings, among them the following:

"(8) Was the plaintiff before she alighted cautioned by the conductor, or in substance told to wait till the car stopped or until the usual stopping place was reached?"

The following were submitted and answered:

"(1) Did the plaintiff get off the car before it stopped? No.

"(2) Was the car at a full stop before the plaintiff stepped or fell from the car? Yes.

"(4) Was the car in motion the instant the plaintiff attempted to alight from the car? Yes.

"(9) Could the plaintiff have fallen or been thrown from the step on which she was standing solely by reason of a jolt or jerk of the car forward? Yes."

We do not discover that it is claimed that any exception was taken to the refusal to submit question 8. A motion for new trial cannot be relied on to save a point on the trial not covered by an exception taken during the trial, as we held in the case of *Conger* v. *Hall*, 158 Mich. 448 (122 N. W. 1073). It is doubtless within the discretion of the circuit judge to grant a new trial on such a ground. We do not rest the decision of this point upon the foregoing reason. We think the learned circuit judge was right in saying that this question was not a controlling one, and refusing to submit it for that reason.

The remark in the argument of the plaintiff's counsel that defendant had omitted to call its timekeeper or other witnesses to contradict the plaintiff's statement that the car was late was not error: (1) Because it is proper in a civil case to comment on the omission of an adverse party to call witnesses in its employ upon a subject peculiarly within their knowledge; and (2) because the question whether the train was late was of no importance in the case.

It was not error to allow plaintiff to testify that "bending over while at work or getting out of a natural position induced pain and suffering."

The cause was well and fairly tried, and we have found nothing of which defendant has cause to complain.

The judgment is affirmed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.